



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB BAFFERT,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CALIFORNIA HORSE RACING<br>BOARD, ROY C. WOOD, JR., IN HIS<br>CAPACITY AS THE EXECUTIVE<br>DIRECTOR OF THE CALIFORNIA<br>HORSE RACING BOARD; AND<br>ROBERT H. TOURTELOT, JOHN C.<br>HARRIS, SHERYL L. GRANZELLA,<br>MARIA G. MORETTI, ALAN W.<br>LANDSBURG, WILLIAM A. BIANCO,<br>AND ROGER H. LICHT, IN THEIR<br>OFFICIAL CAPACITIES AS<br>MEMBERS OF THE CALIFORNIA<br>HORSE RACING BOARD,<br><br>                    Defendants. | CASE NO. CV 01-07363 DT (BQRx)<br><br>ORDER<br>(1)   **GRANTING** PLAINTIFF'S<br>        REQUEST FOR JUDICIAL<br>        NOTICE<br><br>(2)   **GRANTING** DEFENDANTS'<br>        REQUEST FOR JUDICIAL<br>        NOTICE<br><br>(3)   **DENYING** DEFENDANTS'<br>        MOTION TO DISMISS FIRST<br>        AMENDED COMPLAINT<br><br>(4)   **GRANTING** PLAINTIFF'S<br>        SECOND MOTION FOR<br>        PRELIMINARY INJUNCTION |

## I.   **Background**

### A.   **Factual Summary**

This action is brought by Plaintiff Bob Baffert ("Plaintiff") for

violation of his constitutional rights pursuant to 42 U.S.C. § 1983 for violation of

Plaintiff's constitutional right to a fair administrative hearing against Defendants

42

1 | California Horse Racing Board, Roy C. Wood, Jr., Robert H. Tourtelot, John C.

2 | Harris, Sheryl L. Granzella, Maria G. Moretti, Alan W. Landsburg, William A.

3 | Bianco, and Roger H. Licht (collectively, "Defendants").

4 |        The following facts are alleged in Plaintiff's First Amended

5 | Complaint ("FAC"):

6 |        Plaintiff is a trainer of thoroughbred race horses licensed by the

7 | California Horse Racing Board ("CHRB"), which is an administrative agency of

8 | the State of California overseeing the State's horse racing industry. See FAC, ¶ 5.

9 |        Defendant Wood is the Executive Director of the CHRB, and

10 | Defendants Tourtelot, Harris, Granzella, Moretti, Landsburg, Bianco, and Licht

11 | are members of the Board of the CHRB, all of whom are being sued in their

12 | official capacities with the CHRB. See id. at ¶ 6.

13 |        On May 3, 2000, a urine sample was obtained from the thoroughbred

14 | filly, Nautical Look, a horse trained by Plaintiff, following the horse's victory of

15 | the seventh race at Hollywood Park. See id. at ¶ 12. The urine sample was alleged

16 | by the CHRB to contain approximately seventy-three (73) nanograms per milliliter

17 | of morphine (73 billionths of one gram), a pharmacologically insignificant trace

18 | amount which could not affect the performance of a horse in any way. Id. At the

19 | time of the race, Plaintiff was in Kentucky training an entrant in the Kentucky

20 | Derby.

21 |        Based on the finding by Truesdail Laboratories ("Truesdail"),

22 | Defendants' primary laboratory for equine drug testing, of the presence of trace

23 | amounts of morphine in the horse's urine sample, Defendants filed a complaint

24 | against Plaintiff alleging a violation of the Trainer Insurer Rule, section 1887 of

25 | the California Code of Regulations ("CCR"). Additionally, the CHRB charged

26 | Plaintiff with violating CCR Rule 1843(d), which provides that a finding by an

27 |

28 | 2

1  official chemist that a test sample from a horse contains a substance not approved

2  by the CHRB "shall be prima facie evidence that the trainer and his/her agents

3  responsible for the care of the horse has/have been negligent in the care of the

4  horse and is prima facie evidence that the drug substance has been administered to

5  the horse." Id. at paragraph 14.

6      To carry its burden of proof to establish a violation of the Trainer Insurer

7  Rule, Defendants must establish their case by clear and convincing evidence. Id. at

8  paragraph 15. At the hearing before the Board of Stewards, which comprises lay

9  persons who are employees of the CHRB, Id. at paragraph 15; Defendants

10  attempted to establish Plaintiff's violation of the Trainer Insurance Rule by relying

11  exclusively on the evidence of a positive urine test and the presumptions of CCR

12  Rule 1843(b). The only scientific evidence capable of rebutting the Agency's

13  evidence would have been blood samples which were obtained concurrently with

14  the urine sample. Id. at para 14. Truesdail Laboratories, however, destroyed the

15  samples. Id. at para. 15.

16      It was not until the hearing before the Board of Stewards that Defendants

17  disclosed for the first time that Defendants (1) did not perform any confirming

18  tests of the blood samples after the urine sample had allegedly tested positive for

19  morphine, as required by regulation and law and the Agency's publicly bid

20  contract with its own testing laboratory, and (2) had intentionally destroyed the

21  blood samples. Id. at Paragraph 16.  In so doing, Defendants disclosed to the

22  Board of Stewards their failure to comply with the California Horse Racing Laws

23  under the Business and Professions Code §19580, the equine medication Rules

24  and Regulations, CCR Rules §§1843, 1843.2 and 1843.5, and with the express

25  language of the CHRB's publicly bid contract with Truesdail Laboratories. Id. at

26  paragraphs 16-17. Defendants' conduct thus prevented Plaintiff from producing

27

28                                                3

1   evidence that would rebut and overcome the rebuttable presumptions in the

2   Agency's regulations that Plaintiff was negligent in the care of the horse or that

3   the drug had been administered to the horse. Id. at paragraph 16.

4        The following uncontradicted evidence appears in the record of the

5   proceedings before the CHRB's Board of Stewards:

6      (a)   Plaintiff was in Kentucky at the time of the alleged incident and had

7            not been present in California for more than a week theretofore.

8      (b)   After every California thoroughbred horse race, blood and urine

9            samples are taken from the winner and two other horses. The samples

10           are then analyzed by the CHRB's laboratory for the presence of

11           prohibited substances in accord with California Horse Racing Laws

12           under the Business and Professions Code §19580, the equine

13           medication Rules and Regulations, CCR Rules §§1843, 1843.2 and

14           1843.5, and with the express language of the CHRB's publicly bid

15           contract with Truesdail Laboratories.

16     (c)   In this case, as in every case, two vials of blood were extracted from

17           the horse Nautical Look and were held by Defendants. Each sample

18           was marked with an identifying label. One vial of blood and one

19           container of urine were sent to Truesdail Laboratories for testing. The

20           other vial of blood was sent to the CHRB's office's in Sacramento

21           and stored as a "split sample."

22     (d)   CHRB publicly and competitively contracted with Truesdail

23           Laboratories to provide testing of the blood and urine samples

24           obtained after every California horse race. The contract provides that

25           "[e]very equine urine and blood sample shall be initially tested to

26

27

28                    4

detect any and all drug substances foreign to the horse." The contract further states:

> "In the event that an analytical finding is made in a post race urine the corresponding blood sample must also be further tested for the presence of the compound found in the urine sample."

(e)   No confirmatory blood tests were conducted in this case on either the blood sample in Truesdail's possession or on the split sample in the CHRB's possession. Both blood samples were destroyed by Defendants prior to being tested.

(f)   Dr. Norman Hester, the Technical Director of Truesdail Laboratories, testified before the Board of Stewards that the urine sample was tested and allegedly found positive for the presence of a trace amount of morphine, approximately 73 nanograms. Dr. Hester testified as an expert witness before the Board of Stewards that this amount is a pharmacologically insignificant amount which could not have affected the performance of the horse.

(g)   Dr. Hester also testified Nautical Look's blood sample in Truesdail's possession was not tested to confirm the presence of morphine allegedly detected in the urine sample, but the blood sample was intentionally discarded prior to being tested.

(h)   The CHRB's Equine Medical Director, Dr. Ronald C. Jensen, testified the second blood sample (the "split" sample), which was held in an evidence locker in Sacrimento, was intentionally destroyed after the Agency was notified by Truesdail the urine sample from Nautical Look had testified positive for a minute amount of

morphine, before the CHRB filed its complaint and instituted administrative proceedings against Plaintiff.

(i)     Defendants failed to inform any trainers or horsemen of Defendants' policy of destroying blood samples and not performing confirmatory blood tests. Plaintiff first discovered this information at the hearing before the Board of Stewards.

Id. at paragraph 17. Additionally, Plaintiff raised an important argument attacking the validity of Defendants' evidence. Dr. Stephen A. Barker of the Louisiana State University School of Medicine, Plaintiff's expert witness, testified that the trace level of morphine found in Nautical Look's urine could have been the result of accidental environmental contamination of the horse's feed, and was not consistent with intentional administration of the drug. Dr. Barker further testified that if blood samples had been preserved and tested for morphine and the test result was negative or reported at a low trace level (in "nanograms"), this scientific evidence would have raised questions as to whether the urine test was in error, whether it had been compromised, and, at the very least, presented conclusive proof that there could not have been an intentional administration of morphine to the horse prior to the race, thereby rebutting the prima facie argument evidence relied on by Defendants pursuant to C.C.R. Rule 1843(d), that Plaintiff was negligent in the care of his horse and that morphine had been administered to the horse. Id. at 21.

Notwithstanding that evidence, at the conclusion of the hearing the Board of Stewards ruled Plaintiff had violated the Trainer Insurance Rule and imposed a sixty day suspension of his training license and a fine of $10,000.00. Such a suspension would require all horses in training with Plaintiff be transferred to

1  others to continue to race and would likely result in the permanent loss of these

2  horses by Plaintiff. Id. at 15.

3      In contravention of their own rules and regulations to test both urine and

4  blood samples, Defendants secretly discarded and destroyed the official and split

5  blood samples, thereby depriving Plaintiff of his right to defend himself in the

6  disciplinary hearings with scientific exculpatory evidence. Id. at paragraph 18.

7      In addition to those Constitutional violations, Defendants' secret policy and

8  procedure of discarding blood samples violates California Business and

9  Professions Code provisions regarding the administration and enforcement of the

10  CHRB's powers. Section 19431 of the Business and Professions Code requires

11  concurrence by at least four board members for any official action or "exercise of

12  any of the board's duties, powers, or functions," and that a public record of every

13  such vote be maintained at the board's general office. The policy of discarding one

14  third of all daily blood samples does not appear in any public record. Id. at 19.

15      Defendants' secret policy of destroying blood samples also directly violates

16  the express intent of the California Legislature as stated in the California Business

17  and Professions Code § 19580, which provides:

18          "(a)   The board shall adopt regulations to establish policies,

19                 guidelines, and penalties relating to equine medication in order

20                 to preserve and enhance the integrity of horse racing in the

21                 state. Those policies, guidelines, and penalties shall include, at

22                 minimum, the provisions set forth in this article.

23          (b)   It is the intent of the Legislature that the board, in its testing

24                 efforts to deterimine illegal or excessive use of substances,

25                 *recognize the greater importance of conducting complete and*

26                 *thorough testing of a lesser number of samples in preference to*

27

28                                       7

1                 *conduction less thorough testing on a greater number of*

2                 *samples.*" [Emphasis added.]

3        Defendants, in their official capacity as members of the CHRB, have failed

4 to conduct "complete and thorough testing" of Nautical Look's blood samples, and

5 have therefore failed to comply with § 19580. Id. at paragraph 20.

6        Defendants' conduct in failing to perform a confirming blood test as

7 required by their rules and regulations of State law and the publicly bid contract,

8 as well as their secret practice of destroying blood samples, has resulted and

9 continues to result in the violation of Californial laws and regulations and a

10 deprivation of Plaintiff's Constitutional due process rights. Plaintiff cannot receive

11 a fair hearing before the Board of Stewards or a fair trial before an administrative

12 law judge or court of law in the continuing administrative proceedings in progress

13 because he has been irrevocably deprived by Defendants of the opportunity to

14 rebut the evidence and presumptions against him.

15        By violating California's rules and regulations, and its own publicly

16 contracted bid, and by continuing to pursue administrative proceedings against

17 Plaintiff, Defendants have denied and continue to deny Plaintiff a Constitutionally

18 fair hearing by destroying the only available exculpatory evidence which would

19 demonstrate the urine test was either a false positive because there was no

20 confirming test of morphine in the blood, or that the finding in the urine was the

21 result of accidental environmental contamination rather than a pre-race

22 administration by Plaintiff or his agents. As a result of Defendants' intentional

23 destruction of the blood samples, Plaintiff is denied the opportunity to rebut the

24 evidence against him, a right entitled to him under California Government Code §

25 11513(b). Id. at 23.

26

27

28                                         8

1   Defendants, in their official capacity, are both an investigative and a

2 prosecutorial entity. As such, they had control over the blood samples and a duty

3 to preserve the evidence for testing by Plaintiff, especially evidence they knew or

4 should have known had exculpatory value. Id. at 24.

5   Upon discovery of these facts, Plaintiff moved to dismiss the complaint

6 before the Board of Stewards, which was summarily denied after the Stewards

7 consulted the Attorney General's office, the same body prosecuting Plaintiff for

8 Defendants.

9   Plaintiff continues to be subjected to disciplinary proceedings by

10 Defendants, including a hearing before an administrative law judge, which could

11 result in a suspension or loss of his trainer's license, and at the very least, the loss

12 of future income for years and irreparable injury to his reputation as a result of a

13 suspension.

14   Any attempt by Plaintiff to exhaust his administrative remedies before the

15 CHRB, and any action in the State Court to overturn the Agency's final decision,

16 constitutes an inadequate and costly remedy because the only potentially

17 exculpatory evidence available to Plaintiff has been destroyed by Defendants.

18 Additionally, under Calfirnia Government Code §11517, the case will be assigned

19 for a second trial before an administrative law judge. After a full hearing, the

20 ALJ's decision will not be binding upon the CHRB, but may be rejected. The

21 Board is free to order another trial before the ALJ, or impose their own decision

22 and penalties against Plaintiff if they disagree with the ALJ's decision. This

23 process can continue indefinitely. Only after a final decision by the CHRB, and

24 after a penalty is imposed, can Plaintiff seek a writ in State Court for relief. The

25 proceedings are costly, time consuming, and continue to deprive Plaintiff of his

26

27

28          9

1  constitutional right to a fair trial because of the destruction of evidence that would

2  exonerate him. Id. at 27.

3      As a result of Defendants' unconstitutional conduct, Plaintiff will suffer

4  irreparable damage to his reputation and his ability to earn a living at his chosen

5  profession. Additionally, Defendants have denied and continue to deny Plaintiff

6  his fundamental right to due process of law under the Fourteenth Amendment, in

7  violation of 42 U.S.C. §1983.

8      Plaintiff contends injunctive relief is the appropriate remedy in civil rights

9  actions under 42 U.S.C. §1983, particularly in a case such as this, where

10 Defendants pursuit of accusations against Plaintiff will result in the continuing

11 deprivation of Plaintiff's Constitutional rights. Plaintiff asks this Court to enjoin

12 further pursuit of administrative proceedings against Plaintiff under the Trainer

13 Insurance Rule; to require Defendants to dismiss the complaint against Plaintiff in

14 any such administrative proceedings; or in the alternative, enjoin the admission or

15 use of the urine test results in any further state administrative proceedings and

16 strike the purported urine sample test results from the record of the Board of

17 Stewards' hearing. Additionally, Plaintiff requests reasonable attorney fees and

18 costs, in accord with 42 U.S.C. § 1988(b).

19     **B.    Procedural Summary**

20     On August 23, 2001, Plaintiff filed a Complaint for Injunctive Relief and a

21 Motion for a Preliminary Injunction. Plaintiff subsequently filed a Notice of

22 Withdrawal of his Motion for Preliminary Injunction on September 19, 2001.

23     On August 27, 2001, this Court filed a Standing Order with Regard to

24 Newly Assigned Cases.

25     On September 17, Defendant California Horse Racing Board filed a Motion

26 to Dismiss and a Request for Judicial Notice in Support of the Motion to Dismiss.

27

28                                    10

1   Defendant subsequently filed a Notice of Withdrawal of its Motion to Dismiss on

2   September 28, 2001.

3        On September 27, 2001, Plaintiff filed a First Amended Complaint for

4   Injunctive Relief pursuant to 42 U.S.C. § 1983 on the ground that Defendant's

5   destruction of exculpatory evidence denied Plaintiff a fair hearing in an

6   administrative disciplinary hearing by Defendant.

7        On October 22, 2001, Defendants filed a Motion to Dismiss the First

8   Amended Complaint and a Request for Judicial Notice in Support of the Motion to

9   Dismiss, which are presently before this Court.

10       On October 29, 2001, Plaintiff filed a Notice of Motion and Motion for a

11   Preliminary Injunction and a Request for Judicial Notice in Support of the Motion

12   of a Preliminary Injunction, which are presently before the Court.

13   **II.**    **Discussion**

14      **A.**    **Standard**

15         **1.**    **Request for Judicial Notice**

16       A court must take judicial notice if a party requests it and supplies the

17   court with the requisite information  Fed. R. Evid. 201(d); see Papai v. Harpor Tug

18   and Barge Co., 67 F.3d 203, 207, n.5 (9th Cir.1995).  "A judicially noticed fact

19   must be one not subject to reasonable dispute in that it is either (1) generally

20   known within the territorial jurisdiction of the trial court or (2) capable of accurate

21   and ready determination by resort to sources whose accuracy cannot reasonably be

22   questioned."  Fed. R. Evid. 201(b).  This Court may take judicial notice of facts

23   outside the pleadings without converting the motion to one for summary judgment.

24   See Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

25   1986)(citing Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd., 245 F.2d 67,

26   70 (9th Cir. 1956)).

27

28                                   11

1    A court may take judicial notice of "records and reports of

2    administrative bodies." Mack, 798 F.2d at 1282 (citing Interstate Natural Gas Co.

3    v. Southern California Gas Co., 209 F.2d 380, 385 (9th Cir. 1953)). In addition,

4    this Court may take judicial notice of its own records, and documents that are

5    public records and capable of accurate and ready confirmation by sources that

6    cannot reasonably be questioned. See MGIC Indem. Corp. v. Weisman, 803 F.2d

7    500, 504 (9th Cir. 1986) (courts may take judicial notice of matters of public

8    record outside the pleadings); United States v. Wilson, 631 F.2d 118, 119 (9th Cir.

9    1980) (courts may take judicial notice of their own records); United States ex rel.

10    Robinson Rancheria v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (judicial

11    notice of "proceedings in other courts, both within and without the federal judicial

12    system, if those proceedings have a direct relation to matters at issue" is proper).

13    **2.    Motion to Dismiss for Lack of Subject Matter Jurisdiction**

14    Rule 12(b)(1) of the Federal Rules of Civil Procedure recognizes

15    dismissal of an action for lack of subject matter jurisdiction. Federal courts are

16    "presumed to lack jurisdiction in a particular case unless the contrary affirmatively

17    appears." Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir.

18    1989). Thus, when a defendant brings a motion to dismiss for lack of subject

19    matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff bears the

20    burden of establishing jurisdiction. See Kokkonen v. Guardian Life Ins., 511 U.S.

21    375, 378, 114 S. Ct. 1673, 1675 (1994). A federal court has subject matter

22    jurisdiction over an action that either arises under federal law, or where the matter

23    in controversy exceeds $75,000, and is between (1) citizens of different States, (2)

24    citizens of a State and citizens or subjects of a foreign state, (3) citizens of

25    different States and citizens or subjects of a foreign state that are additional

26

27

28                                                    12

1 | parties, or (4) a foreign state as plaintiff and citizens of a State or of different

2 | States.  See 28 U.S.C. §§ 1331, 1332(a).

3 | ### 3.    Motion to Dismiss for Failure to State a Claim

4 | Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a

5 | defendant may seek to dismiss a complaint for "failure to state a claim upon which

6 | relief can be granted." FED. R. CIV. P. 12(b)(6).  Pursuant to Rule 12(b)(6), the

7 | court may only dismiss a plaintiff's complaint if it appears beyond doubt that the

8 | plaintiff can prove no set of facts in support of his claim which would entitle him

9 | to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Russell v. Landrieu, 621

10 | F.2d 1037, 1039 (9th Cir. 1980).  The question presented by a motion to dismiss is

11 | not whether a plaintiff will prevail in the action, but whether a plaintiff is entitled

12 | to offer evidence in support of his claim.  Cabo Distributing Co., Inc. v. Brady,

13 | 821 F.Supp. 601 (N.D. Cal. 1992).  Dismissal is proper under Rule 12(b)(6) only

14 | where there is a lack of a cognizable legal theory, or an absence of sufficient facts

15 | alleged under a cognizable legal theory.  Balisteri v. Pacifica Police Dept., 901

16 | F.2d 696, 699 (9th Cir. 1988).  In testing the sufficiency of a complaint, the court

17 | must assume that all of the plaintiff's allegations are true, and must construe the

18 | compliant in a light most favorable to the plaintiff.  United States v. City of

19 | Redwood City, 640 F.2d 963, 966 (9th Cir. 1981) (citing California Dump Truck

20 | Owners Assn. v. Associated General Contractors of America, 562 F.2d 607, 614

21 | (9th Cir. 1977); McKinney v. DeBord, 507 F.2d 501, 503 (9th Cir. 1974)).

22 | Therefore, it is only the extraordinary case in which dismissal is proper.  Corsican

23 | Productions v. Pitchess, 338 F.2d 441, 442 (9th Cir. 1964).

24 | A motion to dismiss for failure to state a claim challenges the

25 | pleadings.  Unless the court decides to convert a Rule 12(b)(6) motion into a

26 | motion for summary judgment under Rule 56 and gives adequate notice of such

27 |

28 |

1  intent, the court cannot consider material outside of the complaint. FED. R. CIV. P.

2  12(b); Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1483 (9th Cir. 1991).  The

3  court may, however, consider exhibits submitted with the complaint and matter

4  that may be judicially noticed pursuant to Federal Rule of Evidence 201.  Hal

5  Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.

6  1989; Mack v. South Bay Beer Distributors Inc., 798 F.2d 1279, 1282 (9th Cir.

7  1986).

8          In considering a motion to dismiss pursuant to Fed. R. Civ. P.

9  12(b)(6) the Court must assume that plaintiffs' allegations are true, and must

10  construe plaintiffs' complaint in the light most favorable to plaintiffs.  See United

11  States v. City of Redwood City, 640 F.2d 963, 967 (9th Cir. 1981).  Moreover,

12  even if the face of the pleadings indicates that recovery is unlikely, the plaintiff is

13  still entitled to offer evidence in support of the complaint.  See Scheuer v. Rhodes,

14  416 U.S. 232, 236 (1974); Redwood City, 640 F.2d at 967.  Finally, a court may

15  not dismiss complaints pursuant to Fed. R. Civ. P. 12(b)(6) "unless it appears

16  beyond doubt that the plaintiff can prove no set of facts in support of his claim

17  which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957);

18  Russell v Landrieu, 621 F.2d 1037, 1039 (9th Cir. 1980).

19          Generally, orders granting motions to dismiss are without prejudice

20  unless "allegations of other facts consistent with the challenged pleading could not

21  possibly cure the defect."  Schreiber Dist. v. Serv-Well Furniture, 806 F.2d 1393,

22  1401 (9th Cir. 1986).

23          **4.     Motion for Preliminary Injunction**

24          To prevail on a motion for preliminary injunction, the moving party is

25  required to show either a combination of probable success on the merits and the

26  possibility of irreparable injury if relief is not granted, or the existence of serious

27

28                                           14

1  questions regarding the merits and that the balance of hardships tips sharply in its

2  favor. Chalk v. U.S. District Court, 840 F.2d 701, 704 (9th Cir. 1987); California

3  Cooler, Inc. v. Loretto Winery, Ltd., 774 F.2d 1451, 1455 (9th Cir. 1985).   A

4  showing of a reasonable likelihood of success on the merits raises a presumption

5  of irreparable harm. Apple Computer, Inc. v. Formula International Inc., 725 F.2d

6  521, 525 (9th Cir. 1984) (citing Apple Computer, Inc. v. Franklin Computer Corp.,

7  714 F.2d 1240, 1254 (3d Cir. 1983), cert. dismissed, 464 U.S. 1033 (1984)).   A

8  showing of harm varies inversely with the required showing of meritoriousness.

9  Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).

10         A preliminary injunction is not a preliminary adjudication on the

11  merits but rather a device for preserving the status quo and preventing the

12  irreparable loss of rights before judgment. Sierra On-Line, Inc. v. Phoenix

13  Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).  It is an equitable device for

14  preserving rights pending final resolution of the dispute. Id. at 1423.  "The district

15  court is not required to make any binding findings of fact; it need only find

16  probabilities that the necessary facts can be proved." Id.  The Court must balance

17  the equities in the exercise of its discretion. International Jensen, Inc. v.

18  Metrosound, U.S.A., Inc., 4 F.3d 819, 822 (9th Cir. 1993).

19  **B.    Analysis**

20  **1.    Parties' Requests for Judicial Notice**

21         Defendants request this Court take judicial notice of the following

22  documents pursuant to FED.R.EVID. 201(d):

23         (1)    Statement of Decision of the Board of Stewards in the Matter

24                of Trainer Bob Baffert;

25

26

27

28                                          15

1    (2)  Stay Order issued by the Superior Court of the state of

2        California for the County of Los Angeles, Case No. BS

3        066600; and

4    (3)  Plaintiff's Notice of Appeal to the California Horse Racing

5        Board.

6    Plaintiff requests this Court take judicial notice of nineteen

7 documents pursuant to FED.R.EVID. 201(d), specifically listed in Plaintiff's

8 Request for Judicial Notice filed on November 5, 2001, and attached in Volumes I,

9 II, and III of Plaintiff's Motion for Preliminary Injunction.

10    This Court finds that judicial notice of the above mentioned

11 documents is appropriate because all three items are "capable of accurate and

12 ready determination by resort to sources whose accuracy cannot be questioned."

13 FED.R.EVID. 201(d); <u>See</u> <u>Papai v. Harbor Tug and Barge Co.</u>, 67 F.3d 203, 207,

14 n.5 (9th Cir. 1995) (judicial notice of orders and decisions made by other courts is

15 proper); <u>United States ex. rel. Robinson Rancheria v. Borneo, Inc.</u>, 971 F.2d 244,

16 248 (9th Cir. 1992) (judicial notice of "proceedings in other courts, both within

17 and without the federal judicial system, if those proceedings have a direct relation

18 to matters at issue" is proper); <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504

19 (9th Cir. 1986) (courts may take judicial notice of matters of public record outside

20 the pleadings).  Moreover, in reviewing the attached documents at issue, this Court

21 finds both sides have supplied the requisite information to allow this Court to take

22 judicial notice of the above listed items.

23    Based on the above, this Court hereby **GRANTS** both Plaintiff's and

24 Defendants' Requests for Judicial Notice.

25    **2.**   **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

26

27

28          16

1    Defendants' Motion to Dismiss is based on Fed.R.Civ.P. 12(b)(1) and

2   12(b)(6). Because Fed.R.Civ.P. 12(b)(1) challeges this Court's subject matter

3   jurisdiction, it must be addressed "first, as dismissal under this rule makes all other

4   challeges moot." Althin CD Medical, Inc. v. West Suburban Kidney Center, C.C.,

5   874 F.Supp. 837, 839 (N.D.Ill. 1995).

6    Defendants seek dismissal of Plaintiff's Complaint on the ground that

7   this Court lacks subject matter jurisdiction over this case. Defendants contend

8   proper administrative procedures have not been exhausted. Alternatively, Plaintiff

9   argues this Court has subject matter jurisdiction because Defendants' continued

10   pursuit of disciplinary administrative proceedings have denied, and continue to

11   deny, Plaintiff his right to due process of law. Plaintiff further argues he is not

12   required to exhaust administrative remedies before appealing to this Court, and

13   that, as a result of the power and authority of Defendants over the administrative

14   process, such a conclusion can be forestalled indefinitely by Defendants.

15    Defendants argue Plaintiff's action is a gratuitous attempt to avoid state

16   procedures and remedies, and that the Court must dismiss Plaintiff's Complaint

17   pursuant to Younger v. Harris, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S.Ct. 746

18   (1971).[1] The Court disagrees, and finds the Younger abstention doctrine is

19   inappropriate here because Defendants' basis for imposition of disciplinary

20   sanctions against Plaintiff is so flawed with error and speculative evidence.

21    This Court is not required to apply the Younger abstention doctrine where a

22   plaintiff demonstrates the state agency may be pursuing disciplinary or

23   prosecutorial administrative proceedings against him in bad faith. See Flowers v.

24   _____

25    [1] Under the Younger abstention doctrine a federal court must abstain when "(i)
the state proceedings are ongoing; (ii) the proceedings implicate important state
26   interests; and (iii) the state proceedings provide an adequate opportunity to raise
27   federal questions." Id.

28    17

1 State of Hawaii, 87 F.3d 1318 (1996). A prosecution is brought in bad faith if it is

2 brought without a reasonable expectation of obtaining a valid conviction. Id.

3 Here, the Court finds Plaintiff has demonstrated Defendants may be prosecuting

4 him in bad faith, and therefore, Younger abstention is inappropriate to prevent

5 further injury and embarrassment to Plaintiff.

6       This case is extremely similar to the facts presented in Flowers, in which the

7 plaintiff, a plastic surgeon, was the subject a disciplinary action brought by the

8 Regulated Industries Complaints Office of the State of Hawaii Department of

9 Commerce and Consumer Affairs, the prosecutorial agency for the State of Hawaii

10 Board of Medical Examiners. At the disciplinary hearing, the plaintiff introduced

11 evidence showing the investigation was biased, that the defendant failed to comply

12 with laws and regulations, that notwithstanding these failures and breaches, and

13 that despite evidence of other leading physicians and scientists that the underlying

14 facts did not support the petition, the prosecution continued.  The plaintiff alleged

15 the disciplinary action was brought in bad faith and filed an action in federal

16 district court under 42 U.S.C. §1983 against officials of the agency for a

17 preliminary injunction. The district court denied the motion on abstention grounds,

18 issuing a stay of federal proceedings pending the outcome of state disciplinary

19 action. The Ninth Circuit reversed the district court's judgment, vacating the stay

20 order and instructing the district court to enter a preliminary injunction on the

21 grounds that the plaintiff demonstrated the defendants were prosecuting him in

22 bad faith. The Court held Younger abstention was inappropriate where a

23 prosecution is brought without a reasonable expectation of obtaining a valid

24 conviction. Id. The Court finds the facts of this case raise serious concerns along

25 the lines of the Flowers case.

26

27

28                               18

1        While Plaintiff does not explicitly allege Defendants are prosecuting

2  him in bad faith, the Court finds, given the weight and sufficiency of the evidence

3  presented before the Board of Stewards by both parties, that a valid conviction

4  could not be obtained and sustained where Defendants failed astoundingly to

5  comply with its own rules and regulations, thereby sacrificing the rights of

6  Plaintiff to a fair hearing. Had the constitutional requirements of <u>California v.</u>

7  <u>Trombetta</u>, 467 U.S. 479 (1984), and <u>Brady v. Maryland</u>, 337 U.S. 83 (1963), been

8  adhered to in the proceedings, given Defendants' numerous breaches in the course

9  of its investigation, it appears there could not have been a valid conviction without

10 more credible evidence.

11       Additionally, given the circumstances here, the Supreme Court's

12 decisions in <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S.

13 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and <u>Moses H. Cone Mem'l Hosp. v.</u>

14 <u>Mercury Const. Co.</u>, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), lead this

15 Court to conclude the prudent course is for this Court not to abstain from resolving

16 the issue. In <u>Colorado River</u> and <u>Moses Cone</u>, the Supreme Court cited the factors

17 a federal court should consider whether the interests of wise judicial

18 administration and a comprehensive disposition of the litigation outweigh the duty

19 to exercise jurisdiction. The Supreme Court stated that federal courts should

20 consider the need to avoid piecemeal litigation, the order in which state and

21 federal proceedings were filed, and other problems that may occur with both state

22 and federal courts exercise jurisdiction. <u>See</u> <u>Colorado River</u>, 424 U.S. at 818-19,

23 93 S.Ct. at 1246-47. In addition, the existence of a federal question weighs heavily

24 against abstention. <u>See</u> <u>Moses Cone</u>, 460 U.S. at 23, 103 S.Ct. at 941. These

25 factors should "be applied in a pragmatic and flexible manner with a view to the

26 realities of the case at hand." <u>Id.</u> at 940.

27

28                              19

1    Here, the issue is essentially a Constitutional due process claim.
2 Federal law does indeed factor into the determination of the reasonableness of
3 Defendants' pursuit of administrative disciplinary proceedings given the factual
4 circumstances of the case. Additionally, this Court is mindful of the Supreme
5 Court's admonition that the abstention doctrine is only to be applied in
6 "exceptional circumstances," Colorado River, 424 U.S. at 813, 93 S.Ct. at 1244,
7 and this Court finds that the circumstances of this case do not warrant abstention.

8    Defendants raise several other points warranting discussion. They
9 argue, in addition to the foregoing, Plaintiff's claims are not ripe because he has
10 suffered no damages thus far. Because the enforcement of the suspension of
11 Plaintiff's license and the monetary penalty have been stayed pending the hearing
12 before the ALJ, Plaintiff has suffered no injury. Notwithstanding the stay order,
13 Defendant is forced to incur expenses defending proceedings whose outcome has
14 no enforcement power over the Board of Stewards, which has already issued a
15 suspension and monetary penalty, and can be forestalled indefinitely at the
16 Board's whim. The Court finds this argument without merit.

17    The Court also finds without merit Defendants' argument that the
18 findings of the Board of Stewards precludes this Court from considering Plaintiff's
19 claims. Indeed, this Court found the Board of Stewards' ruling to be at odds with
20 the Board's own recitation of the facts contained in the ruling. The Court also
21 finds Defendants' Eleventh Amendment claims with respect to immunity of the
22 CHRB and its individual employees similarly without merit.

23    The Court finds dismissal on the ground of Plaintiff's failure to
24 exhaust administrative procedures unwarranted in this case with these facts as
25 presented. Because this Court has subject matter jurisdiction over the entire action,
26 Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) is **denied**.

27

28                                             20

### 3.   Defendants' Motion to Dismiss for failure to state a claim

Assuming the allegations in the Complaint are true, and construing Plaintiff's Complaint in the light most favorable to Plaintiff, it does not appear beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief by this Court. Consequently, Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is **denied**.

### 4.   Plaintiff's Application for Preliminary Injunction is Granted

This Application is made pursuant to Rule 65 of the Federal Rules of Civil Procedure. Injunctive relief is an extraordinary equitable remedy, which can be granted only in limited circumstances and which should not be granted in a doubtful case.  A preliminary injunction is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment. Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).  It is an equitable device for preserving rights pending final resolution of the dispute. Id. at 1423. "The district court is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved." Id.

In this instance, Plaintiff requests this Court enjoin Defendants from continuing any further administrative proceedings against Plaintiff under the Trainer Insurer Rule related to the urine test performed on Nautical Look following the seventh race at Hollywood Park on May 3, 2000, requiring Defendants to dismiss the Complaint against Plaintiff in such administrative proceedings, or in the alternative, enjoining the admissibility of the results of the urine test in any further State administrative proceedings and striking the urine test

1  results from the record of the Board of Stewards' hearing in the administrative

2  action.

3         This Motion is based on an alleged deprivation of due process under

4  the law, and is made on the grounds that immediate and irreparable injury will

5  result to Plaintiff unless the activities described above are enjoined pending trial

6  of this action. Plaintiff claims that it demonstrates a strong probability of success

7  on the merits by the evidence submitted by both parties before the Board of

8  Stewards. The strong showing of success on the merits raises a presumption of

9  irreparable harm to Plaintiff.

10        Plaintiff argues he meets the established standards for injunctive

11  relief. In determining whether to grant an injunction, courts analyze four factors:

12  (1) whether the moving party is likely to prevail on the merits; (2) whether the

13  moving party would suffer irreparable harm if an injunction were not granted; (3)

14  whether the balance of hardships tips in the moving party's favor; and (4) the

15  impact, if any, of an injunction on the public interest. Hybritech, Inc. v. Abbott

16  Lab., 849 F.2d 1446, 1451 (Fed. Cir. 1988). No one factor is dispositive; rather,

17  courts balance all the factors, affording each its appropriate weight under the

18  circumstances of the case. Id.  Plaintiff argues that each of the four factors

19  decidedly favors immediate injunctive relief. In opposition, Defendants contend

20  Plaintiff's Motion for Preliminary Injunction should be denied for the reasons set

21  forth in their Motion to Dismiss. This Court agrees with Plaintiff's position for

22  purposes of this Motion for the reasons which will be fully elaborated in further

23  detail below.

### a.    Likelihood of Success on the Merits

25        Plaintiff contends he is likely to succeed in demonstrating that

26  Defendants who are state officials are depriving him of his constitutional right to

27

28                                    22

1   due process, that this violation is continuing and causing him irreparable harm,

2   and there is no remedy presently available to him as a result of Defendants'

3   actions.

4         The Due Process Clause of the Fourteenth Amendment requires the

5   State to preserve for defendants in criminal cases exculpatory evidence that is

6   material either to guilt or punishment, and a violation of that duty requires

7   dismissal of the relevant charges. See Brady, 373 U.S. at 87; Trombetta, 467 U.S.

8   at 488-89. Moreover, this principle applies to quasi-criminal administrative

9   disciplinary proceedings by a state licensing agency to insure the licensee a

10  constitutionally full and fair administrative hearing. See Scott v. Meese, 174

11  Cal.App.3d 249, 256-57 (1985). The constitutional right to due process includes

12  the opportunity to meet and rebut evidence relied on by the state agency in support

13  of its accusations and charges, and the right to a full, fair and impartial

14  consideration of the issues. See Arnet v. Kennedy, 416 U.S. 134 (1974); Button v.

15  Board of Administration of the Public Employees Retirement System, 122

16  Cal.App.2d 370, 378 (1981).

17        Additionally, licenses to practice a profession are "vested rights"

18  which require Constitutional due process before they can be affected or taken

19  away. See Lavin v. CHRB, 57 Cal.App.4th 263, 268-69 (1997). Plaintiff argues he

20  was deprived, and continues to be deprived of these rights by Defendant's

21  intentional and secret destruction of all potentially exculpatory evidence in this

22  matter, and by the failure of Defendants to comply with its own rules and

23  regulations. The evidence presented before the Board of Stewards by both parties,

24  which is outlined above, supports these allegations. Plaintiff has established that

25  Defendants intentionally destroyed two separate blood samples in its custody

26  which were required to be tested following a positive urine test. The first blood

27

28  23

1  sample was intentionally destroyed as part of an ongoing policy to eliminate one
2  third of all blood samples that enter the laboratory, in contravention to the laws
3  and regulations of the State requiring confirmatory blood testing where urine tests
4  produce a positive result for illegal substances. The second split blood being held
5  in an evidence locker by Defendants was intentionally and ominously destroyed
6  following notification to Defendants by Truesdail Laboratories that the
7  corresponding urine sample had tested positive for morphine, but before
8  Defendants filed its complaint against Plaintiff.

9          It is well established that "the core duty to preserve constitutionally
10 material evidence under the Due Process Clause of the Fourteenth Amendment
11 remains and that duty applies to administrative hearings." Scott v. Meese, 174
12 Cal.App.3d 249 (1985). This Court finds Plaintiff is likely to succeed in
13 establishing Defendants' conduct constituted a violation of this principle.
14 Defendants introduced evidence of the laboratory report showing trace amounts of
15 morphine were found in urine in order to establish a violation of the Trainer
16 Insurer Rule. The Defendants rested their case on the basis of that evidence alone.
17 Under the Trainer Insurer Rule, a positive urine test establishes a rebuttable
18 presumption of prima facie evidence of negligence and/or administration of the
19 drug. Thereafter the burden shifts to the trainer to present contrary or mitigating
20 evidence in order to show the drug had not been administered to the horse by the
21 trainer or his employees and/or that the trainer was not negligent in the care of his
22 horse. See Rule 1843(d). Plaintiff presented uncontradicted evidence before the
23 Board of Stewards that preservation and testing of the blood samples, if their
24 levels were consistent with the urine sample, would have been conclusive proof
25 that no pre-race administration of any prohibited substance took place.

26

27

28                                          24

1   Defendants contend Plaintiff's defense does not depend on the blood

2   tests, and in fact acknowledge the low levels of morphine found in the urine

3   sample, as well as the likelihood that blood tests would have yielded negative

4   results, supporting a finding that administration was improbable. Instead,

5   Defendants argue that California has a zero tolerance standard which supports the

6   Board's ruling that Defendant was negligent in the care of his horse,

7   notwithstanding the very low level of morphine found in the urine sample, which

8   could have been explained by accidental environmental contamination without

9   implicating the level of care provided by Plaintiff. Nevertheless, Rules 1843,

10   1843.2 and 1843.5 require confirmatory testing presumably to prevent

11   unwarranted proceedings and insure due process is exercised. Notwithstanding

12   California's zero tolerance policy, Defendants violated its own rules and

13   regulation, thereby compromising Plaintiff's constitutional rights to a fair hearing.

14   The Court finds Plaintiff is likely to succeed on the merits in this

15   case.

### b.   Danger of Irreparable Injury

17   Plaintiff claims he will suffer immediate irreparable harm if

18   Defendants at are not restrained. A showing of a reasonable likelihood of success

19   on the merits raises a presumption of irreparable harm. Apple Computer, Inc. v.

20   Formula International Inc., 725 F.2d 521, 525 (9th Cir. 1984) (citing Apple

21   Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1254 (3d Cir. 1983),

22   cert. dismissed, 464 U.S. 1033 (1984)).  A showing of harm varies inversely with

23   the required showing of meritoriousness. Rodeo Collection, Ltd. v. West Seventh,

24   812 F.2d 1215, 1217 (9th Cir. 1987).

### i.   Irreparable Harm is Presumed as a Matter of Law

28   25

1       Immediate irreparable harm is presumed in cases like this where the

2 plaintiff makes a strong showing of the likelihood of success on the merits. See,

3 Canon Computer Sys., Inc. v. Nu-Kote Int'l Inc., 134 F.3d 1085, 1090 (Fed. Cir.

4 1998) (upholding preliminary injunction against defendant who manufactured and

5 sold replacement cartridges for plaintiffs printers). In light of this presumption,

6 Plaintiff's claims that it has made the required showing of irreparable harm.

7       Even without such a presumption, Plaintiff alleges that the factual

8 record here shows that the harm Defendants are causing is immediate, irreparable,

9 and warrants a preliminary injunction. Defendants assert that Plaintiff's obtaining

10 of an injunction is not warranted, because of the stay of Plaintiff's suspension and

11 fine.  However, this Court recognizes the Board is not obligated to accept the

12 decision by the ALJ following a trial of this matter, and may either render its own

13 decision or return the matter to the ALJ for further proceedings. Moreover,

14 Plaintiff has demonstrated his inability to provide an adequate defense as a result

15 of Defendants' destruction of the blood samples. Additionally, Plaintiff's

16 reputation and cash flow have been compromised. As such, this Court finds a

17 presumption of irreparable injury in Plaintiff's favor.

18       **c.**     **The Balance of Hardships Tips Sharply in**

19                          **Plaintiff's Favor**

20       The Ninth Circuit in Los Angeles Memorial Comm'n v. Nat'l

21 Football League, 634 F.2d 1197, 1200 (9th Cir. 1980), held that the basic function

22 of a preliminary injunction is to preserve the status quo pending a determination of

23 the action on the merits.  The moving party may meet its burden by demonstrating

24 either (1) a combination of probable success on the merits and the possibility of

25 irreparable injury, or (2) that serious questions are raised and the balance of

26

27

28                                  26

1    hardships tips sharply in its favor. Id. at 1201. "These are not separate tests, but

2    the outer reaches 'of a single continuum.'" See, Id.

3           In this instance, Plaintiff argues the third preliminary injunction

4    factor, balance of hardships, also favors Plaintiff. Plaintiff argues the ongoing

5    proceedings would work irreparable harm both financially and to his reputation.

6           Defendants argue the balance of hardships tips in their favor because

7    of the preemption to the ongoing task of California's administrative agency's

8    interpretation and application of its own regulations. The Court does not find this

9    argument convincing, since the CHRB failed in numerable and ongoing ways to

10    comply with its own regulations, and in doing so sacrificed the due process rights

11    of Plaintiff, and perhaps others similarly situated. This Court finds the balance of

12    hardships tips sharply in Plaintiff's favor.

13           **d.**     **The Public Interest also Favors Granting of**

14                 **Plaintiff's Motion for Preliminary Injunction**

15           A Preliminary Injunction is a matter of equity and while

16    the four factors of likelihood of success, irreparable harm, balance of hardships,

17    and public interest must be evaluated and balanced (Illinois Tool Works, Inc. v.

18    Grip-Pak, Inc., 906 F.2d 679, 681 (Fed. Cir. 1990)), "the weakness of the showing

19    regarding one factor may be overborne by the strength of others." Chrysler Motors

20    Corp. v. Auto Body Panels, Inc., 908 F.2d 951, 953 (Fed. Cir. 1990). In general,

21    while the public interest would favor the State's interests in interpreting and

22    applying its own regulations, where a State agency appears to compromise the due

23    process rights of individuals, while denying those individuals a timely remedy for

24    raising constitutional concerns, this Court finds the public interest favors a

25    disposition in Plaintiff's favor in granting of a preliminary injunction.

26

27

28                                27

1    Based on the foregoing, Plaintiff has demonstrated that it is likely to

2    prevail on the merits of its claims and will suffer irreparable injury if the

3    Preliminary Injunction is not granted.  Accordingly, this Court **GRANTS**

4    Plaintiff's Motion for Preliminary Injunction.

5  **III.    Conclusion**

6    Based on the foregoing discussion, this Court hereby

7    (1)    **GRANTS** Plaintiff's and Defendants' Requests for Judicial Notice;

8    (2)    **DENIES** Defendants California Horse Racing Board, et al.'s Motion

9    to Dismiss First Amended Complaint;

10    (3)    **GRANTS** Plaintiff's Second Motion for a Preliminary Injunction.

11    Federal Rule of Civil Procedure 65(d) requires the Court to "describe

12    in reasonable detail . . . the act or acts sought to be restrained."  As such, this

13    Court **ORDERS** as follows:

14    Defendants California Horse Racing Board, Roy C. Wood, Jr., in his

15    capacity as the Executive Director of the California Horse Racing Board, and

16    Robert H. Tourtelot, John C. Harris, Sheryl L. Granzella, Mari G. Moretti, Alan

17    W. Landsburg, William H. Bianco, and Roger H. Licht, in their official capacities

18    as Members of the California Horse Racing Board, their officers, employees,

19    agents, representatives, and all persons acting or claiming to act on its behalf of

20    under its discretion or authority, and all persons acting in concert or in

21    participation with it, shall be preliminarily enjoined from:

22    Holding and/or continuing any further proceedings in the State

23    administrative disciplinary action entitled "In the Matter of the

24    Complaint against Bob Baffort" before the California Horse Racing

25    Board, Case NO. OOHP0027, until such time as the California Horse

26    Racing Board can supply the missing blood samples which were

27

28                                              28

1    obtained concurrently with the urine sample of May 3, 2000 and can

2    fully comply with the applicable State of California procedures and

3    requirements.

4        This Court orders Plaintiff to post a bond in the amount of **$10,000**

5    pursuant to Federal Rule of Civil Procedure 65(c), which states that no preliminary

6    injunction shall issue except upon the giving of security by the applicant.  This

7    security is "in such sum as the court deems proper, for the payment of such costs

8    and damages as may be incurred or suffered by any party who is found to have

9    been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

10       As such, Plaintiff is **ordered** to post a **bond** in the amount of **$10,000**

11   within three (3) days of the entry of this Order.  Counsel for Plaintiff is **ordered** to

12   prepare and submit a Proposed Preliminary Injunction in accordance with this

13   Order within three (3) days of the date of this Order.

14

15       IT IS SO ORDERED.

16

17   DATED: 11|19|2001

18

DICKRAN TEVRIZIAN
_____
Dickran Tevrizian, Judge
United States District Court

19

20

21

22

23

24

25

26

27

28